```
1  DAVID L. LONG #AR-2325
2  C.S.P.-CORCORAN-4B-2L-41
3  P.O. BOX 3481
4  CORCORAN, CA. 93212
5  IN-PRO-PER
```



FILED
CLERK, U.S. DISTRICT COURT
MAR 19 2015
CENTRAL DISTRICT OF CALIFORNIA
BY             DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

DAVID LONG,
    PLAINTIFF,

v.

NORMA ALEJO, ET. AL.
    DEFENDANT(S)

CASE NO 5:15-CV-00536 RT(KK)

PLAINTIFF'S COMPLAINT FOR DAMAGES UNDER [42 U.S.C. §1983 AND 1985] WITH REQUEST FOR JURY TRIAL



RECEIVED
CLERK, U.S. DISTRICT COURT
MAR 17 2015
CENTRAL DISTRICT OF CALIFORNIA
BY             DEPUTY

## INTRODUCTION

1. THIS IS A CIVIL RIGHTS ACTION COMPLAINT FOR DAMAGES ARISING UNDER THE CONSTITUTION OF THE UNITED STATES. PARTICULARLY. THE FIRST, FOURTH, EIGHTH, AND FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES, 42 U.S.C. §1983 AND 1985. ALLEGING THE VIOLATION OF PLAINTIFF'S CONSTITUTIONAL, CIVIL AND HUMAN RIGHTS. AFTER DEFENDANTS ALEJO, DELGADO-ORAMAS, HARE AND GONZALES CONSPIRED TO ARREST PLAINTIFF FOR (1) MURDER AND (2) ATTEMPTED ROBBERY OF ALLEGED VICTIM PINEDA, IN THE COUNTY OF SAN BERNARDINO, CASE NO: FVA 1100219. THIS FEDERAL CIVIL RIGHTS

1.

CLAIM ALLEGING (1) FALSE ARREST FOR MURDER AND ATTEMPTED ROBBERY. PLAINTIFF LONG, ALLEGES THAT DEFENDANTS ALEJO, DELGADO-ORAMAS, HARE, AND GONZALES VIOLATED HIS FOURTH AND EIGHTH AMENDMENT RIGHTS BY FAILING TO KEEP PLAINTIFF FREE FROM A FALSE ARREST.

PLAINTIFF ALLEGES THAT DEFENDANT ALEJO HAD FAILED TO PROTECT PLAINTIFF FROM DEFENDANTS DELGADO-ORAMAS, HARE, AND GONZALES FALSE ARREST FOR MURDER AND ATTEMPTED ROBBERY.

PLAINTIFF ALLEGES THAT DEFENDANTS DELGADO-ORAMAS, HARE, AND GONZALES, DID AN ABSOLUTELY PATHETIC AND SUPERFICIAL JOB INVESTIGATING THE ABOVE REFERENCED MURDER AND ATTEMPT ROBBERY.

PLAINTIFF ALLEGES THAT DEFENDANT ALEJO, DID PARTICIPATE IN DEFENDANTS DELGADO-ORAMAS, HARE, AND GONZALES, FALSE ARREST THIS CONSTITUTES A MALICIOUS PROSECUTION.

AT ALL TIMES RELEVANT MENTIONED, THE JURY ACQUITTED PLAINTIFF OF THE MURDER AND ATTEMPTED ROBBERY COUNTS.

## JURISDICTION

2. THE JURISDICTION OF THIS COURT IS INVOKED PURSUANT TO 28 U.S.C.S §§ 1343(c), WHICH GIVES THIS COURT JURISDICTION OVER MATTERS CONCERNING THE DEPRIVATION OF CONSTITUTIONAL AND CIVIL RIGHTS GUARANTEED BY U.S.C. §§ 1983 AND 1985.

## PARTIES

3. PLAINTIFF DAVID LONG, CDCR NO. #AR-2325 IS A MEXICAN MALE ADULT, AND PRESENTLY BEING DETAINED AT CORCORAN STATE PRISON,

1. P.O. BOX 3481, CORCORAN, CALIFORNIA 93212;
2. 4. DEFENDANT NORMA ALEJO IS A DEPUTY DISTRICT ATTORNEY FOR THE COUNTY OF SAN BERNARDINO, SHE IS SUED IN HER OWN INDIVIDUAL CAPACITY,
3. 5. DEFENDANT DANIEL DELGADO-ORAMAS, IS A HOMICIDE DETECTIVE, AND ASSIGNED TO THE FONTANA POLICE DEPARTMENT, HE IS SUED IN HIS OWN INDIVIDUAL CAPACITY,
4. 6. DEFENDANT SHAWN HARE, IS A HOMICIDE DETECTIVE, AND ASSIGNED TO THE FONTANA POLICE DEPARTMENT, HE IS SUED IN HIS OWN INDIVIDUAL CAPACITY,
5. 7. DEFENDANT MARC GONZALES, IS A HOMICIDE DETECTIVE, AND ASSIGNED TO THE FONTANA POLICE DEPARTMENT, HE IS SUED IN HIS OWN INDIVIDUAL CAPACITY,
6. 8. DOES ONE (1) THROUGH (10), EACH DEFENDANT(S) ARE SUED IN HIS OR HER OFFICIAL AND INDIVIDUAL CAPACITY FOR THEIR FAILURE TO TRAIN AND SUPERVISE DEFENDANTS, AND THEY ARE IN SOME MANNER RESPONSIBLE FOR THE ACTS OR OMISSIONS ALLEGED,
7. 9. AT ALL TIMES MENTIONED HEREIN EACH, AND ALL, DEFENDANTS, WERE ACTING UNDER THE COLOR OF STATE LAW.

## STATEMENT OF FACTS

10. AT ALL TIMES RELEVANT MENTIONED, PLAINTIFF WAS CONFINED AT THE WEST VALLEY DETENTION CENTER, ON A UNRELATED CRIME.
11. ON JANUARY 27, 2011, AT APPROXIMATELY 6:00 TO 7:00 P.M. SUSPECT MONIQUE VARGAS AND HER FRIEND, SUSPECT NORA HERRERA, WERE IN A TATTOO PARLOR IN FONTANA. THE TWO HAD NO

3.

money and no place to stay for the night, and were trying to get a motel room.

12. The two approached a Hispanic male, identified as Carlos Pineda who had ridden to the parlor on his bicycle, and offered to perform sexual favors for him. The three agreed that, in exchange, Pineda would obtain a room, and walked to the Valley Motel, located on Valley Boulevard in Fontana, California, where Pineda paid for and was given room 215.

13. Suspect Vargas also registered in the room, under the name "Monique Lopez." Vargas accompanied Pineda to the room and Suspect Herrera joined them soon after.

14. When they got to the room, Suspect Vargas turned on the air conditioner, which was broken.

15. Approximately (15) minutes after arriving, Vargas and Pineda went to the liquor store to buy personal hygiene products, while Suspect Herrera stayed in the room. After they returned to the room, and after suspects Vargas and Herrera took showers, the three of them began talking about drugs, and Suspect Vargas gave Pineda some crystal methamphetamine that she had been carrying.

16. After they smoked it, the agreed that Pineda would buy some more methamphetamine, so suspect called a friend, who gave him Suspect Penix's number. Suspect Vargas called Suspect Penix, who agreed to bring $50 of drugs over to the motel room, and stated that Plaintiff would drive him to the motel.

17. According to Suspect Herrera, she had met Plaintiff a few weeks earlier, but did not know he was coming to the

4

1. MOTEL ROOM.
2. 18. WHEN PLAINTIFF AND SUSPECT PENIX, WHO WAS WEARING A CAST ON HIS RIGHT HAND, ARRIVED AT THE ROOM AND ASKED FOR MONEY, PINEDA TOLD THEM THAT HE DID NOT HAVE ANY CASH ON HIM, SO HE, PENIX, AND PLAINTIFF WENT TO AN AUTOMATED TELLER MACHINE (ATM)
3. 19. AFTER THEY RETURNED, APPROXIMATELY FIVE TO TEN MINUTES LATER PINEDA GAVE PLAINTIFF THE MONEY AND PLAINTIFF GAVE PINEDA THE DRUGS.
4. 20. SUSPECT VARGAS THEN ASKED PLAINTIFF IF HE COULD GIVE HER A RIDE TO GET A PIPE IN WHICH TO SMOKE THE METHAMPHETAMINE, AND THE TWO OF THEM LEFT FOR A GAS STATION AND CONVENIENCE STORE IN A WHITE TRUCK.
5. 21. ON THE WAY, SUSPECT VARGAS, STOPPED AT THE MOTEL OFFICE AND SPOKE ABOUT THE AIR CONDITIONER TO THE MANAGER, WHO AGREED TO SWITCH THEIR ROOMS.
6. 22. AFTER SUSPECT VARGAS AND PLAINTIFF RETURNED TO THE ROOM, THEY, SUSPECT PENIX, SUSPECT HERRERA AND PINEDA BEGAN SMOKING METHAMPHETAMINE AND WATCHING PORNOGRAPHY OF THE TELEVISION.
7. 23. PLAINTIFF GOT UP AND STATED THAT HE NEEDED TO GO DROP OFF SOME DRUGS, SO HE AND SUSPECT HERRERA LEFT THE ROOM.
8. 24. ACCORDING TO SUSPECT HERRERA, SHE AND PLAINTIFF WENT TO A HOUSE ON CYPRESS IN FONTANA, WHERE THEY PICKED UP AN UNIDENTIFIED MALE INDIVIDUAL, THEN WENT WITH HIM TO THE SKY VIEW MOTEL, LOCATED ON VALLEY AND PALMETTO, APPROXIMATELY A MILE OR TWO FROM THE VALLEY MOTEL TO DROP HIM OFF.
9. 25. WHILE THERE, SEVERAL POLICE ARRIVED AND ARRESTED PLAINTIFF, ON OTHER CRIMINAL CHARGES, NOT RELATED TO MR. PINEDA,
10. 26. AS PLAINTIFF AND SUSPECT HERRERA, WERE BEING STOPPED,

PLAINTIFF TOLD SUSPECT HERRERA THAT THE CAR WAS ALLEGEDLY STOLEN, AND TRIED TO GIVE A KNIFE TO HER, WHO INSTEAD PLACED IT UNDER THE SEAT OF THE TRUCK.

27. IN ADDITION, FOLLOWING PLAINTIFF'S ARREST, POLICE OBSERVED SEVERAL CALLS ON PLAINTIFF'S CELL PHONE, WITH SUSPECT PENIX'S NAME ON THE CALLER ID.

28. SUSPECT HERRERA, REMAINED AT THE MOTEL FOR ABOUT AN HOUR TO AN HOUR AND A HALF, THEN STARTED WALKING BACK TO THE VALLEY MOTEL, WHERE SHE SAW SUSPECTS VARGAS AND PENIX,

29. WHOM SUSPECT HERRERA DESCRIBED AS "WORRIED" AND "SCARED," RUNNING TOWARD THEM.

30. BEFORE PLAINTIFF LEFT, SUSPECT VARGAS ASKED PINEDA IF SUSPECT PENIX COULD STAY, AND PINEDA SAID IT WAS FINE.

31. PRIOR TO LEAVING THE ROOM, AND WHILE PINEDA WAS TAKING A SHOWER, SUSPECT HERRERA SAW SUSPECT PENIX DIGGING THROUGH PINEDA'S BAG AND PACING AND WIPING DOWN A CHAIR WITH HIS BANDANA, WHICH SUSPECT HERRERA, THOUGHT WAS UNUSUAL.

32. SUSPECT PENIX ALSO TOLD SUSPECT HERRERA TO UNPLUG THE PHONE, AND SUSPECT HERRERA COMPLIED.

33. SUSPECT PENIX ALSO GOT ONTO PINEDA'S BRIEF AND TOLD SUSPECT HERRERA THAT IT WAS "COOL" AND THAT HE WAS GOING TO TAKE IT.

34. NEITHER SUSPECT'S HERRERA NOR VARGAS EVER HEARD PLAINTIFF DISCUSS STEALING ANYTHING FROM PINEDA, AND NEITHER SAW PLAINTIFF WITH A GUN.

35. AFTER PLAINTIFF AND SUSPECT HERRERA LEFT, SUSPECTS VARGAS, PENIX AND PINEDA CONTINUED TO SIT IN THE ROOM, TALKING AND WATCHING PORNOGRAPHY.

36. SUSPECT PENIX LEFT THE ROOM, BUT RETURNED ABOUT FIVE MINUTES LATER, TELLING SUSPECT VARGAS THAT HIS CALL TO PLAINTIFF HAD GONE TO VOICE MAIL

37. SUSPECT SAT ON ONE OF THE TWO BEDS OF THE ROOM, WHILE PINEDA WAS MASTURBATING ON THE OTHER BED, AND TOLD SUSPECT VARGAS THAT HE HAD PINEDA'S PERSONAL IDENTIFICATION NUMBER (PIN)

38. SUSPECT VARGAS WENT TO THE RESTROOM AND, WHEN SHE CAME OUT, SHE SAW SUSPECT PENIX STANDING BY THE RESTROOM DOOR WITH A GUN IN HIS HAND.

39. SUSPECT PENIX TOLD SUSPECT VARGAS THAT HE WAS GOING TO COME UP OFF PINEDA, WHO COULD NOT SEE HIM FROM HIS VANTAGE POINT, WHICH SUSPECT VARGAS INTERPRETED AS INDICATING THAT SUSPECT PENIX WAS GOING TO ROB HIM.

40. SUSPECT PENIX WALKED OVER TO PINEDA, WHO WAS LYING IN BED, POINTED THE GUN, AND TOLD VICTIM PINEDA TO TURN OVER ON HIS STOMACH.

41. VICTIM PINEDA PUT HIS HANDS UP, BUT CONTINUED TO LAY ON THE BED, SUSPECT VARGAS TOLD VICTIM, IN SPANISH, TO CALM DOWN AND TURN OVER;

42. HOWEVER, VICTIM PINEDA WALKED OFF THE BED, TOWARD SUSPECT PENIX, WHO WAS INITIALLY APPROXIMATELY SEVEN FEET AWAY. AS HE DID, SUSPECT PENIX BEGAN WALKING BACKWARDS, TOWARDS THE DOOR OF THE MOTEL ROOM, AND TOLD VICTIM PINEDA TO GET BACK.

43. AS SUSPECT PENIX GOT TO THE DOOR, VICTIM PINEDA WALKED UP TO HIM, REACHED TOWARD SUSPECT PENIX, AND PULLED THE GUN.

44. AS VICTIM PINEDA, DID, THE GUN WENT OFF, AND SUSPECT

1. VARGAS SAW BLOOD COMING OUT OF PINEDA'S BACK.
45. ACCORDING TO THE CORONER'S OFFICE, VICTIM PINEDA DIED OF A GUN SHOT WOUND TO THE CHEST, WHICH ENTERED AT THE LEFT NIPPLE AND EXITED THROUGH THE RIGHT LOWER BACK, PASSING THROUGH THE LEFT AND RIGHT LUNGS, AND THROUGH THE HEART.
46. DEFENDANTS ALEJO, DELGADO-ORAMAS, HARE AND GONZALES, FAILED TO PROPERLY INVESTIGATE THE MURDER AND ATTEMPTED ROBBERY OF VICTIM PINEDA; PRIOR TO CRIMINAL CHARGES AGAINST PLAINTIFF.
47. UPON INFORMATION AND BELIEF, DEFENDANTS ALEJO, DELGADO-ORAMAS, HARE AND GONZALES KNEW THAT, PLAINTIFF WAS INNOCENT BY VIRTUE OF SUSPECT PENIX'S STATEMENTS TO POLICE AND PHYSICAL EVIDENCE LENDING TO A LEGAL FACT THAT, A PERSON OTHER THAN PLAINTIFF WAS RESPONSIBLE FOR THE MURDER AND ATTEMPTED ROBBERY
48. DEFENDANTS ALEJO, DELGADO-ORAMAS, FAILED TO INVESTIGATE STATE'S FORENSIC EVIDENCE, AND OTHER TRACE AMOUNTS OF PHYSICAL EVIDENCE AT THE CRIME SCENE WHICH RESULTED IN A FALSE PROSECUTION AGAINST PLAINTIFF.
49. UPON INFORMATION AND BELIEF, DEFENDANTS ALEJO, DELGADO-ORAMAS, HARE AND GONZALES KNEW THAT, AFTER THE SHOOTING, SUSPECTS PENIX AND VARGAS LEFT THE MOTEL ROOM, AND RAN TOWARD AN "AM/PM" CONVENIENCE STORE.
50. ON THE WAY, SUSPECT PENIX TOOK A CAST OFF OF HIS ARM, AND THREW IT IN FRONT OF A BUILDING.
51. FURTHER DOWN, THEY MET SUSPECT HERRERA, WHO HAD LEFT THE SKY VIEW MOTEL AT WHICH PLAINTIFF HAD BEEN ARRESTED.
52. SUSPECT VARGAS TOLD SUSPECT HERRERA THAT, SUSPECT PENIX,

1. ALLEGEDLY SHOT VICTIM PINEDA IN THE MOTEL ROOM, WHEREUPON SUSPECT PENIX LEFT AND BEGAN WALKING DOWN PALMETTO.
2. 53. SUSPECT PENIX ALLEGEDLY CALLED SUSPECT VARGAS, WHO THEN ASKED SUSPECT HERRERA TO RETRIEVE A GUN IN FRONT OF THE BUSHES OF THE LOCAL KAISER PERMANENTE BUT SUSPECT HERRERA REFUSED.
3. 54. SUSPECT PENIX WAS LATER SEEN NEXT TO A LARGE TRASH CAN OR BARREL, WHICH WAS ON FIRE.
4. 55. ACCORDING TO POLICE, JEROME MALVEAUX, WHO AS NOTED ABOVE RESIDED WITH PLAINTIFF, TOLD THEM THAT SUSPECT PENIX HAD HAD CUT OFF HIS CAST AND THROWN A JACKET AND SOME OTHER ITEMS IN THE CAN OR BARREL, THEN SET THEM ON FIRE. THEREAFTER, POLICE WENT TO THE AREA, AND LOCATED A BURNT CAST IN THE BARREL.
5. 56. FOLLOWING HIS ARREST, AND THE WAIVER OF HIS MIRANDA RIGHTS, SUSPECT PENIX WAS INTERVIEWED BY POLICE.
6. 57. DURING THAT INTERVIEW, SUSPECT PENIX ADMITTED HAVING AND LATER DISPOSING OF THE GUN, BUT STATED THAT IT WAS ALREADY THERE WHEN HE AND PLAINTIFF ARRIVED.
7. 58. HOWEVER, SUSPECT PENIX, INITIALLY DENIED SHOOTING OR ATTEMPTING TO ROB VICTIM PINEDA, AND STATED THAT HE INSTEAD HEARD A SHOT WHILE HE WAS IN THE BATHROOM, AND DID NOT KNOW HOW TO FIRE THE GUN.
8. 59. LATER, SUSPECT PENIX, STATED THAT VICTIM PINEDA, GOT ANGRY AT HIM WHEN PENIX REFUSED TO GIVE VICTIM PINEDA MONEY, THAT PINEDA WENT FOR THE GUN AND LUNGED AT SUSPECT PENIX, AND WHILE THEY WERE FIGHTING OVER THE GUN, IT WENT OFF.

60. Suspect Penix also stated that, Suspect Herrera told him that plaintiff had been arrested for carjacking or vehicle theft, and that plaintiff was not present during the shooting.

61. At all times relevant mentioned, Defendants Alejo, Delgado-Oramas, Hare and Gonzales, knew that plaintiff had already left the room, and was not present when the murder or attempted robbery occured. This constitutes a malicious prosecution and false arrest, when the prosecutor is no longer interested in justice.

62. Upon information and belief, Defendant Alejo, acted with maliciousness, vindictiveness, and in fashion which deprived plaintiff of his Eighth Amendment rights, not to be charged with a murder and attempted robbery that, plaintiff clearly was not involved with said crime.

63. Defendants Alejo, Delgado-Oramas, Hare, and Gonzales, did conspire to deny plaintiff of his due process clause of the First, Fourth, Eighth and Fourteenth Amendments.

64. At all times relevant mentioned, Defendant Alejo, and Does, Prosecutors arrested plaintiff for murder and attempted robbery without due process of law.

65. Although an isolated incident, Defendant Alejo, and Does, prosecution constituted official municipal policy for purposes of 42 U.S.C. 1983 and 1985 because Defendant Alejo, acted under delegated final policy making authority.

66. Defendants Does and Defendant Alejo, had delegated discretion, rather than delegated authority, because her decision to prosecute the case was constrained by policies

10.

NOT OF HER OWN MAKING AND WAS SUBJECT TO REVIEW BY SUPERVISORS.

67. AT ALL TIMES RELEVANT MENTIONED, DEFENDANTS ALEJO, DOES, DELGADO-ORAMAS, HARE AND GONZALES, DID AN ABSOLUTELY PATHETIC AND SUPERFICIAL JOB INVESTIGATIVE SAID MURDER AND ATTEMPTED ROBBERY, WHICH RESULTED IN PLAINTIFF'S FALSE ARREST WITHOUT DUE PROCESS OF LAW

68. DOES, WERE SUPERVISORS - DISTRICT ATTORNEY'S OFFICE PERSONNEL WHO FAILED TO PROVIDE PROPER SUPERVISION OVER DEFENDANT ALEJO, WHICH RESULTED IN PLAINTIFF'S FALSE ARREST FOR MURDER, AND ATTEMPTED ROBBERY OF VICTIM PINEDA.

69. AS A DIRECT AND PROXIMATE RESULT OF DEFENDANTS ALEJO, DOES, DELGADO-ORAMAS, HARE, AND GONZALES, FALSE ARREST AND CRIMINAL CORRUPTION AGAINST PLAINTIFF, PLAINTIFF CONTINUE TO PERMANENT AND PSYCHOLOGICAL INJURY FOR FEAR OF GETTING 27 YEARS TO LIFE, PLUS ADDITIONAL YEARS FOR A PRIOR.

70. PLAINTIFF LONG HAS BEEN PERMANENTLY INJURED BY DEFENDANTS, ADMINISTERING SUMMARY CRUEL AND UNUSUAL PUNISHMENT ON THE PLAINTIFF.

71. THE CRIMINAL TRIAL ACTION WAS HELD FROM APRIL 30TH TO MAY 20, 2013.

72. ON MAY 22, 2013 THE JURY ACQUITTED PLAINTIFF OF THE MURDER AND ATTEMPTED ROBBERY.

## FIRST CAUSE OF ACTION
## AGAINST ALL THE DEFENDANTS
## FOR FALSE ARREST FOR MURDER
## AND ATTEMPTED ROBBERY

73. PLAINTIFF RE-ALLEGES AND INCORPORATE HEREIN BY REFERENCE EACH AND EVERY ALLEGATION OF PARAGRAPHS (1) THROUGH (72).

74. DEFENDANTS ALEJO, DELGADO-ORAMAS, HARE AND GONZALES, CONSPIRED TO SUBJECT PLAINTIFF TO A FALSE ARREST FOR MURDER AND ATTEMPTED ROBBERY OF VICTIM PINEDA, CASE NO. FVA1100219, WAS UNJUSTIFIED OR PERMITTED BY LAW, VIOLATED PLAINTIFF RIGHTS UNDER THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION IN THAT IT CONSTITUTED CRUEL AND UNUSUAL PUNISHMENT.

## SECOND CAUSE OF ACTION
## AGAINST ALL DEFENDANTS
## FOR FABRICATED EVIDENCE CLAIM

75. PLAINTIFF RE-ALLEGES AND INCORPORATES BY REFERENCE ALL ALLEGATIONS CONTAINED IN ALL PREVIOUS PARAGRAPHS

76. DEFENDANTS ALEJO, DELGADO-ORAMAS, HARE, AND GONZALES, ARE STATE ACTORS WHO FABRICATED EVIDENCE DURING A MURDER AND ROBBERY INVESTIGATION.

77. DEFENDANTS ALEJO, DELGADO-ORAMAS, HARE, AND GONZALES, CONTINUED THEIR MURDER AND ATTEMPTED ROBBERY CHARGES AGAINST PLAINTIFF, DESPITE THE FACT THAT, THE EYE-WITNESSES TOLD THE POLICE THAT, PLAINTIFF WAS NOT INVOLVE WHATSOEVER

78. DEFENDANTS ALEJO, DELGADO-ORAMAS, HARE AND GONZALES, DID USE INVESTIGATIVE TECHNIQUES THAT WERE SO COERCIVE AND ABUSIVE THAT THEY KNEW OR SHOULD HAVE KNOWN THAT THOSE TECHNIQUES WOULD YIELD FALSE INFORMATION, WHICH VIOLATED PLAINTIFF'S FOURTH, EIGHTH, AND FOURTEENTH AMENDMENT.

### THIRD CAUSE OF ACTION
### AGAINST DOES - SUPERVISORS
### DISTRICT ATTORNEY'S OFFICE AND POLICE

79. PLAINTIFF RE-ALLEGES AND INCORPORATES BY REFERENCE ALL ALLEGATIONS CONTAINED IN ALL PREVIOUS PARAGRAPHS.

80. DEFENDANTS - DOES, AND EACH OF THEM, WERE EITHER RECKLESSLY CALLOUS OR INDIFFERENT TO PLAINTIFF'S CONSTITUTIONAL RIGHTS, KNEW ABOUT THE VIOLATIONS AND FAILED TO ACT TO PREVENT THEM, PERSONALLY INVOLVED IN THE VIOLATIONS FAILED TO TRAIN, SUPERVISE OR CONTROL SUBORDINATES, OR ENACTED POLICIES WHICH WERE THE MOVING FORCE FOR THE CONSTITUTIONAL VIOLATIONS AS STATED ABOVE IN THIS LAWSUIT.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

DATE: 2/19/2015

RESPECTFULLY SUBMITTED
BY: David Long
DAVID L. LONG
IN-PRO-PER

| Date\Time: 2/23/2015 8:31:18 AM | | CDCR | | Verified: _____ |
| --- | --- | --- | --- | --- |
| Institution: COR | | **Inmate Statement Report** | | |
| **Start Date:** | 8/23/2014 | **Revalidation Cycle:** | All | |
| **End Date:** | 2/23/2015 | **Housing Unit:** | All | |
| **Inmate/Group#:** | AR2325 | | | |

THE WITHIN INSTRUMENT IS A CORRECT
COPY OF THE TRUST ACCOUNT MAINTAINED
BY THIS OFFICE.
ATTEST: 02/23/2015
CALIFORNIA DEPARTMENT OF CORRECTIONS
BY _____ Acct Clerk II
TRUST OFFICE

1

Date\Time: 2/23/2015 8:31:18 AM  
Institution: COR

# CDCR
## Inmate Statement Report

Verified: _____

| CDCR# | Inmate/Group Name | Institution | Unit | Cell/Bed |
|---|---|---|---|---|
| AR2325 | LONG, DAVID | COR | 04BB2LC1 | 041001 |

Current Available Balance: $0.00

THE WITHIN INSTRUMENT IS A CORRECT COPY OF THE TRUST ACCOUNT MAINTAINED BY THIS OFFICE.
ATTEST: 02/23/2015
CALIFORNIA DEPARTMENT OF CORRECTIONS
BY _____
TRUST OFFICE

### Transaction List

| Transaction Date | Institution | Transaction Type | Source Doc# | Receipt#/Check# | Amount | Account Balance |
|---|---|---|---|---|---|---|

**No information was found for the given criteria.**

### Encumbrance List

| Encumbrance Type | Transaction Date | Amount |
|---|---|---|

**No information was found for the given criteria.**

### Obligation List

| Obligation Type | Court Case# | Original Owed Balance | Sum of Tx for Date Range for Oblg | Current Balance |
|---|---|---|---|---|
| COPY CHARGES | | $0.40 | $0.00 | $0.40 |
| COPY CHARGES | 12/10/13 COPY | $12.90 | $0.00 | $12.90 |

### Restitution List

| Restitution | Court Case# | Status | Original Owed Balance | Interest Accrued | Sum of Tx for Date Range for Oblg | Current Balance |
|---|---|---|---|---|---|---|
| RESTITUTION FINE | FVA1100219 | Active | $280.00 | $0.00 | $0.00 | $280.00 |

## E. REQUEST FOR RELIEF

I believe that I am entitled to the following specific relief:

WHEREFORE, PLAINTIFF PRAYS FOR THE FOLLOWING RELIEF AGAINST ALL DEFENDANTS, BOTH JOINTLY AND SEPARATELY:

(A) JUDGEMENT AGAINST DEFENDANTS FOR ACTUAL DAMAGES IN AN AMOUNT OF (2) MILLION DOLLARS TO BE PROVEN AT TRIAL.

(B) JUDGEMENT AGAINST DEFENDANTS FOR PUNITIVE DAMAGES IN THE AMOUNT OF $250,000 TO BE PROVE AT TRIAL

(C) JUDGEMENT AGAINST DEFENDANTS FOR THE COST OF THIS CIVIL ACTION, PLUS REASONABLE ATTORNEY'S FEE'S, AS PROVIDE BY 42 U.S.C. §§1988

(D) SUCH OTHER AND FURTHER RELIEF TO WHICH PLAINTIFF MAY BE ENTITLED

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

2/19/2015
(Date)

*(Signature of Plaintiff)*

NAME, ADDRESS AND TELEPHONE NUMBER OF ATTORNEY(S)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

DAVID LONG

PLAINTIFF(S),

v.

NORMA ALEJO ET. AL

DEFENDANT(S).

CASE NUMBER

PROOF OF SERVICE - ACKNOWLEDGMENT OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of __KING__, State of California, and not a party to the above-entitled cause. On __2/19__, 20__15__, I served a true copy of _____ by personally delivering it to the person (s) indicated below in the manner as provided in FRCivP 5(b); by depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid to the following: (list names and addresses for person(s) served. Attach additional pages if necessary.)

Place of Mailing: __C.S.P - CORCORAN__
Executed on __2/19__, 20__15__ at __CORCORAN__, California

Please check one of these boxes if service is made by mail:

☐ I hereby certify that I am a member of the Bar of the United States District Court, Central District of California.
☐ I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.
☑ I hereby certify under the penalty of perjury that the foregoing is true and correct.

_David Long_
Signature of Person Making Service

ACKNOWLEDGEMENT OF SERVICE

I, _____, received a true copy of the within document on _____.

_____          _____
Signature                 Party Served

CV-40 (01/00)    PROOF OF SERVICE - ACKNOWLEDGMENT OF SERVICE